(C. D. 474)

REMINGTON RAND, INC., *v.* UNITED STATES

United States Customs Court, Second Division

(Decided April 22, 1941)

*Brooks & Brooks* (*Frederick W. Brooks, Jr.*, of counsel) for the plaintiff.
*Charles D. Lawrence*, Acting Assistant Attorney General (*Richard H. Welsh*, special attorney), for the defendant.

Before TILSON, KINCHELOE, and DALLINGER, Judges

DALLINGER, Judge: These are suits against the United States, arising at the port of New York, brought to recover certain customs duties alleged to have been improperly exacted on particular importations described in the invoice as "Automatic verifying machines." Duty was levied thereon at the rate of 35 per centum ad valorem under paragraph 353 of the Tariff Act of 1930 as articles having as an essential feature an electrical element or device. It is claimed that said articles are properly dutiable at the rate of 27½ per centum ad valorem under paragraph 372 of said act as machines not specially provided for.

The plaintiff offered in evidence the testimony of Arthur Pentecost, a mechanical engineer in the employ of the plaintiff-corporation. He testified that he had seen machines similar to those here imported at the factory in Croyden in England where they were manufactured, and had seen the particular machines at bar when they arrived in this country; and that the illustration which was admitted in evidence as illustrative exhibit A correctly represented the machines at bar.

The witness then testified in part as follows:

Q. * * * just describe the use and function, how it operates.—A. In the preparation of a perforated card, the record, the original data is set up on a keyboard by the punch operator, and a card is punched similar to this exhibit here.

At this juncture the card in question was admitted in evidence as illustrative exhibit B.

The witness then continued:

Usually the punch operator operates very quickly, and there is just a possibility of a misdepression of a key, and in order to make sure that the perforated record, before being used in a tabulating machine, is correctly punched, it is necessary to verify the punch by repeating the operation. Now, the particular method involving the use of this verifying machine requires——

By Mr. BROOKS.

By "this verifying machine" you mean the machine covered by the first exhibit, Illustrative Exhibit A?—A. Yes, sir; exactly. The card is put through the punch a second time, but in the second procedure the card is placed slightly farther in the rear, so that as the same punch comes down it would elongate the original punched hole. In fact, the card is double-punched, with the result that a hole similar to this exhibit is produced. (Illus. exhibit C.)

* * * * * * *

Q. In respect to the power by which operated, have you personally operated this machine?—A. Yes, sir.

Q. In what way?—A. Well, usually by hand, by this hand wheel.

Q. Referring to that circular wheel shown on Illustrative Exhibit A?—A. Yes, sir; it is the wheel in the center of the cut. That wheel is attached, and there is one main shaft which continues through to the other side, and on the other side of the machine, in corresponding position practically, can be placed a pulley to be driven from any source of power.

Q. Is there a pulley actually present there?—A. It is usually supplied. It is not shown in the cut because it is on the opposite end of the hand wheel.

Q. But the pulley is present in the machine when completely equipped?—A. Oh, yes.

Q. How is that pulley operated?—A. It is belt-driven.

\*　　　　\*　　　　\*　　　　\*　　　　\*　　　　\*　　　　\*

Q. But it is shaft-driven?—A. Yes, sir.

Q. In other words, the power depends upon the kind of power the factory has that is operating all of the shafts?—A. Yes, sir.

\*　　　　\*　　　　\*　　　　\*　　　　\*　　　　\*　　　　\*

Q. Is this machine when imported equipped with any motor?—A. No.

On cross-examination the witness testified in part as follows:

By Mr. WELSH.

Q. Is this machine equipped with any electrical wiring or devices at all in its condition as imported?—A. It is not necessary.

X Q. I asked you if it was.

Judge DALLINGER. Yes or no.

The WITNESS. Yes, with an electric fuse plug. ·

By Mr. WELSH.

X Q. Is that all?—A. Might I add that the electric fuse plug is of a different type for its use in this country. If it comes on the machine at all, it is inadvertently placed there. It is useless.

By Judge KINCHELOE.

Q. That part of the apparatus is not used?—A. Not at all; we throw it away.

By Mr. WELSH.

\*　　　　\*　　　　\*　　　　\*　　　　\*　　　　\*　　　　\*

X Q. In its condition as imported, it would be necessary to wire it further to operate electrically?—A. Yes, sir.

\*　　　　\*　　　　\*　　　　\*　　　　\*　　　　\*　　　　\*

X Q. Was it designed to be operated electrically or with any sort of power?—A. It was designed to be operated with any sort of power.

X Q. If you wanted to use electrical power, what would you have to do to that machine?—A. Get a motor, connect the motor up to the main line, get a switch intermediate and get a fuse plug.

\*　　　　\*　　　　\*　　　　\*　　　　\*　　　　\*　　　　\*

X Q. If you wanted to operate it by gas engine, what would you have to do to it?—A. Start the engine going and put a suitable pulley on the engine shaft, and put a belt in between the engine shaft pulley and pulley on the machine.

X Q. And in its condition as imported, it was already fitted to be hand-operated?—A. By a belt; to be belt or hand-driven.

On this record and upon the established facts and the law applicable thereto we hold that the automatic verifying machines constituting the imported merchandise at bar are not articles having as an essential feature an electrical element or device within the meaning of paragraph 353 of the Tariff Act of 1930, as classified by the collector, but are properly dutiable at the rate of 27½ per centum ad valorem under paragraph 372 of said act as machines not specially provided for, as alleged by the plaintiff. That claim is therefore sustained; but as to all other merchandise the claims are overruled. Judgment will be rendered accordingly.